IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TERRY J. M., <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:17-cv-00129-EJF <br><br> Magistrate Judge Evelyn J. Furse |

In accordance with Fed. R. Civ. P. 73 and based upon the parties' consent (ECF No. 22), this matter is before the Court on Plaintiff Terry J. M.'s[1] appeal from the denial of her claim for disability insurance benefits (DIB) under Title II of the Social Security Act. (ECF No. 3.) Ms. M. filed her claim on November 16, 2011, and alleges she became disabled beginning September 15, 2007. (Certified Administrative Transcript (Tr.) 19.) Ms. M. alleges that the Commissioner wrongly found her able to return to her past work as a "station manager." (Tr. 871.) After oral argument on the issues and the review of the parties' briefing, the administrative law judge's ("ALJ") decision, the record of proceedings in this case and relevant case law, the undersigned finds that the ALJ erred in his analysis with respect to Ms. M.'s past relevant work and failure to assign weight to one of the medical opinions of record. Therefore, the Commissioner's final

---

[1] Pursuant to newly adopted best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the Court will refer to the Plaintiff by her first name and last initial only in this opinion.

decision is reversed, and this case is remanded to the Agency under sentence four of 42 U.S.C. § 405(g) for further proceedings.

## I. STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3). In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. See Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); Thomson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993); Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993).

## II. RELEVANT FACTS

Ms. M. first applied for disability insurance benefits on November 16, 2011; she has a date last insured for Title II purposes of December 31, 2011. (Tr. 158-164; 863.) After her claim was denied initially and upon reconsideration, she requested a hearing, which was held in October 2013 before an ALJ. (Tr. 78; 79; 47-76.)

The ALJ denied Ms. M.'s claim on February 12, 2014. (Tr. 16-37.) She requested Appeals Council review, which was denied on June 23, 2015. (Tr. 1-6.) Ms. M. appealed to the United States District Court, District of Utah, and on March 22, 2016,

at the SSA's request, the District Court remanded Ms. M.'s case to the Agency. The Appeals Council subsequently remanded the case as well, ordering the ALJ to further evaluate Ms. M.'s past work, which appeared to exceed the residual functional capacity (RFC) found by the ALJ, and further evaluate her mental impairments. (Tr. 931-932.) With respect to Ms. M.'s past work the Appeals Council directed:

> The Administrative Law Judge found the claimant could perform past relevant work as a station manager and as a reservation agent . . . . At the hearing, however, the vocational expert testified that the claimant's past work as actually performed fell under the categories of airport utility worker . . . and reservation agent . . . . The Dictionary of Occupational Titles (DOT) classifies the job of airport utility worker as a heavy, semi-skilled job with an SVP of 4, and the job of car rental clerk as a light, semi-skilled job with an SVP of 4. The decision reflects that the claimant is capable of only sedentary work, with some postural limitations . . . . Thus, the claimant's past wok appears greater than the claimant's residual functional capacity. Further evaluation is warranted.

(Tr. 931.)

A different ALJ held the remand hearing on October 7, 2016. (Tr. 883-895.) The second ALJ denied Ms. M.'s claim on November 5, 2016. (Tr. 858-880.) Specifically, he found that the following impairments "severe" at step 2 of the sequential evaluation set forth in the regulations, 20 C.F.R. § 404.1520: degenerative disc disease of lumbar spine and obesity. (Tr. 863.) He found that none of these impairments met the requirements of a listed impairment (step 3), and that Ms. M. had the RFC to perform a full range of sedentary work except she could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps and stairs, stoop, crouch and crawl, and could frequently balance and kneel. (Tr. 863-65.) The ALJ included no mental limitations in the RFC. (Tr. 865.)

3

Based on this RFC, the ALJ found that Ms. M. could perform past relevant work as a "station manager" and denied her claim on that basis at step 4 of the sequential evaluation. (Tr. 871.) Ms. M. then initiated a new civil action in the District Court, pursuant to the appellate rights explained in the ALJ's decision (Tr. 859), and pursuant to 42 U.S.C. § 405(g).

The record contains additional facts significant for the purposes of the issues raised in this appeal. With respect to Ms. M.'s past work, in her first work history report, she described her position as Great Lakes Airways Station Manager as working the "ramp area," loading and unloading bags and directing planes in and out, and deicing aircraft. She reported lifting up to 70 pounds at a time and 50 pounds frequently. (Tr. 187.) Her position as SkyWest Airlines Station Manager required, in essence, the same tasks as her previous position. She again described having "work[ing] the security area," loading and unloading bags and freight, directing planes in and out, and deicing planes in winter. Again, she described lifting up to 70 pounds at a time and 50 pounds frequently. (Tr. 188.)

At her first hearing, Ms. M. testified to lifting luggage and freight in her position as manager at Great Lakes Airlines. (Tr. 56.) Consistent with her work history report she reported doing "the same thing" for Sky West Airlines. (Tr. 57.) The vocational expert testified that her positions for the airlines were a combination of numerous positions, stating that she would like to provide some DOT numbers and then "editorialize a little bit." (Tr. 72.) The vocational expert testified that Ms. M.'s past work included the positions of station manager (DOT 184.167-082, sedentary, SVP 8) and manager, vehicle leasing and rental (DOT 187.167-062, light, SVP 8), then explained:

4

> I think that you really have to go to the airstrip in Vernal to appreciate the work of the station manager . . . this person makes the reservations, rents the car, checks the freight, de-ices the wings, directs the planes, and so I think that this job, as it's performed in this little community, really best falls under the title of airport utility worker. It's DOT number 912.663-010. It's classified as a heavy, semi-skilled job with an SVP of 4. I think that captures much of the physical demands of the job. And then, at the other end, I would say reservation agent. That's DOT number 238.367-018. That's classified as a sedentary, semi-skilled job with an SVP of 4. And then the car work, both at the airport and in the town, I would classify that title under car rental clerk. It's DOT number 295.467-026. It's classified as a light, semi-skilled job with an SVP of 4, but it was medium as performed, as the individual also did all of the automotive detailing.

(Tr. 72-73.)

In a subsequent work history report on May 18, 2016, Ms. M. confirmed her duties performed in these two positions. (Tr. 1036.) She was not asked to elaborate on her duties in her testimony at the second hearing. (Tr. 883-894.) At that hearing, the vocational expert testified that Ms. M.'s "past work has been that of a station manager, airline, DOT number 184.167-082. That's sedentary work, unskilled, with an SVP of 8. A manager, car rental, DOT number 185.167-046. That is light work, skilled, SVP of 7. And I believe that concludes past work." (Tr. 891.) The ALJ asked no further questions regarding this classification, and in response to a hypothetical that mirrored the ultimate RFC finding, the second vocational expert testified such a person could perform the station manager position. (Tr. 891-892.)

Upon cross examination, the vocational expert acknowledged that Ms. M.'s past work as she had actually performed it has been "heavy" in exertion and that she would not be able to perform her past work as she had actually performed it under the hypothetical. (Tr. 892.) He later explained that "[b]asically she was the manager and apparently she would go out on the line and deal with the public, and also help with

5

luggage on the ramps and stuff like that. How it's normally performed is she has employees that are responsible for that."[2] (Tr. 893.) The ALJ relied on the second vocational expert's testimony when denying benefits at step 4, finding that Ms. M. can perform the position of "station manager, airline (DOT 184.167-082, SVP 8)" as generally performed in the economy. (Tr. 871.)

Also critical in this case is the opinion of the State Agency examining psychological expert, A.L. Carlisle, Ph.D. (Tr. 493-496.) Ms. M. presented for the consultative examination with Dr. Carlisle on February 6, 2012, only 5 weeks after her date last insured. (Id.) Dr. Carlisle diagnosed Ms. M. with "Major Depressive disorder, moderate to severe" and opined that she had a global assessment of functioning (GAF) score of 52.[3] (Tr. 496.) Dr. Carlisle stated she had depressive disorder "with a lot of anxiety." He stated that she was emotionally abused by her husband who was a very heavy drinker. She reported nightmares and crying spells which last up to an hour. (Tr.

---

[2] The position listed at DOT 184.167-082, entitled "station manager (airlines)," is described in the DOT as follows:

> Reviews station activity reports to ascertain data required for planning station operations. Directs preparation of work schedules to obtain optimum utilization of human resources and facilities. Coordinates activities of passenger reservations and ticketing, passenger services, ramp and cargo services, commissary services, and dispatching of aircraft to ensure operations meet company and government policies and regulations. Directs preparation of passenger lists, cargo manifests, and plans for stowage of cargo and baggage aboard aircraft. Evaluates training and performance records of employees to determine and formulate training designed to increase employee efficiency. May direct activities of TRANSPORTATION AGENTS (air trans.).

[3] A GAF score of 52 represents at least moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g. conflicts with peers or co-workers). with a poor prognosis. Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision.

495.) She needs Ambien in order to sleep and has insomnia without it. (Id.) She reported taking Celexa for depression and was in tears "off and on" throughout the psychological assessment. (Tr. 493.) When finding Ms. M.'s depression "nonsevere" at step 2 of the sequential evaluation, the ALJ referenced Dr. Carlisle's opinion in citations (exhibit 12F), but did not otherwise evaluate or analyze the opinion. (Tr. 864-865.) In the RFC analysis, the ALJ rejected the "GAF scores" in the record, but did not otherwise discuss Dr. Carlisle's opinion. (Tr. 870.)

## III. DISCUSSION

### A. The ALJ's step 4 finding.

A claimant's "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in [past relevant] work;" the Agency recognizes that "this is an important and, in some instances, a controlling issue, [therefore] every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62. An ALJ must obtain "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements" as appropriate. Id. A legally sufficient step 4 denial must include three specific findings of fact:

1. A finding of fact as to the individual's RFC.

2. A finding of fact as to the physical and mental demands of the past job/occupation.

3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

7

Id. Thus, in sum, the claimant's abilities and limitations considering all her impairments must be compared to the precise and specific demands of the past work to support a step 4 denial.

Critical to this case, a denial of benefits based on a claimant's past relevant work "as generally performed" requires that the ALJ carefully considered specifics of a claimant's <u>actual</u> past work. SSR 82-61 states that a "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." If a claimant's actual past work was a "composite job," a job which has "significant elements of two or more occupations and, as such, they have no counterpart in the DOT," a denial at step 4 is only appropriate if the claimant can perform <u>every</u> part of the job. Id.

With respect to Ms. M.'s past relevant work, the Court finds that the ALJ's lack of analysis regarding whether Ms. M.'s past relevant work constituted a composite job requires remand. After this case was previously remanded to the Agency, the Appeals Council clearly indicated concern with the evidence in the record regarding Ms. M.'s past relevant work being performed at a high physical demand level versus the RFC. At the first hearing, the ALJ developed evidence regarding how Ms. M. performed her past job and that it was, in actuality, a number of different jobs that she performed in combination. The vocational expert at the first hearing validated Ms. M.'s testimony, with her experience as an expert, indicating that at smaller airports, such as the ones where Ms. M. had worked, the job was performed in this manner; that one person performed multiple jobs.

After remand and rehearing, there was no new testimony taken about the jobs as performed by Ms. M. When a different vocational expert testified at the second hearing, this expert testified that the appropriate job title for Ms. M.'s past work was simply as a "station manager," and that a person limited in the manner set forth in the residual functional capacity (RFC) finding could perform the sedentary job. There was no further inquiry from the ALJ regarding this issue, and when Ms. M.'s counsel inquired about the ability to do the "station manager" position, the sum of that testimony was that while Ms. M. could not perform her past work as she had performed it, she could perform the position of "station manager" that the Dictionary of Occupational Titles described.

The critical issue here is that the ALJ's decision remained silent as to why classification of Ms. M.'s past work as being solely as a "station manager" was appropriate. Again, the Agency's authority directs that in some cases generic classifications of a claimant's past work is "likely to be fallacious and unsupportable." SSR 82-61. The ALJ acknowledged that Ms. M. performed her past work at a heavy exertional level, and beyond that the only discussion is that the "station manager" position is sedentary in exertion and that Ms. M. can perform that under the RFC. This explanation fails to support the denial of benefits based solely on the "station manager" position. The ALJ has an obligation to discuss significant contrary evidence and explain why he did not find it persuasive. Clifton, 79 F.3d at 1010. The ALJ's failure to discuss Ms. M.'s testimony about having a multifaceted job and the first vocational expert's testimony about the competing job descriptions reflects a failure to follow the required process and leaves this Court unable to review the decision for substantial evidence. Considering the evidence of record, there is not a sufficient explanation to permit review

9

regarding whether Ms. M.'s past work should have been considered a composite job, or what evidence supported the step 4 finding. Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

The Appeals Council clearly anticipated more of an explanation than it had previously.[4] Problematically, this decision contains even less of an explanation regarding the step 4 finding than the prior ALJ decision. Nothing in the evidence contradicts Ms. M.'s testimony regarding her past work and what it entailed; accordingly, the failure to discuss that and the nature of the job is reversible error in that it is key evidence that was not discussed. See, e.g., 42 U.S.C. § 423(a)(4)(C) ("Any determination under this paragraph shall be made on the basis of all the evidence available in the individual's case file..."); 20 C.F.R. § 404.953 ("[T]he administrative law judge must base the decision on the preponderance of the evidence offered at the hearing, or otherwise included in the record."); SSR 06-03p ("[W]hen we make a determination or decision of disability, we will consider all of the available evidence in the individual's case record."). On this basis, remand is necessary for further findings regarding the classification of Ms. M.'s past work, and specifically whether it was a composite job and, most critically, the basis for that finding in the record. See Grogan, 399 F.3d at 1261-62.

---

[4] Again, as Ms. M.'s claim had previously been remanded by the District Court, she was permitted (and elected) to return directly to the District Court, instead of requesting another review by the Appeals Council. (Tr. 859.)

10

### B. The ALJ's evaluation of Dr. Carlisle's opinion.

The ALJ also erred by failing assign weight to Dr. Carlisle's opinion. Under the Social Security Act, an ALJ must discuss the evidence and explain why he or she found the claimant not disabled. 42 U.S.C. § 405(b)(1); see also Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ need not discuss every piece of evidence, but must discuss significant probative and uncontroverted evidence that the ALJ declined to rely on. Clifton, 79 F.3d at 1010.

The regulations place medical opinion evidence in a distinct category from other medical evidence, requiring that an ALJ not only reference medical opinions, but specifically evaluate such in the decision. 20 C.F.R. §§ 404.1527(c), 416.927(c) (regardless of its source, the Commissioner will evaluate every medical opinion). If an ALJ rejects a medical opinion, he must "provide specific, legitimate reasons for rejecting it." Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003).

While the ALJ's decision contains reference to Dr. Carlisle's opinion and discussion regarding part of the opinion, namely the GAF score and why he rejected it, the decision otherwise lacks any analysis of the remainder of the opinion. Here, where there is such importance regarding Ms. M.'s ability to perform her past work (which is skilled), the lack of discussion of weight given to Dr. Carlisle's opinion is critical. Depending on the ALJ's analysis the error could be harmless, but it could also be outcome-determinative. At the time of her date last insured, Ms. M. was an individual of "advanced age" (55 or older) with an eleventh grade education (a "limited" education). (Tr. 55.) Again, there is a critical issue as to the classification of Ms. M.'s past work, but, regardless, if she cannot perform this under the RFC the issue of transferable skills

11

is a crucial one.  There was no vocational testimony elicited regarding whether Ms. M. has transferable skills from her past work, contrary to the Appeals Council remand order (Tr. 932).  If Ms. M. lacks transferable skills, these vocational factors, when combined with the ALJ's finding that she is limited to a range of "sedentary work," direct a finding of "disabled" under the Agency's Medical-Vocational Guidelines at step 5 and Ms. M. is entitled to benefits.  20 C.F.R. § 404, Subpt. P, App. 2, 201.02.  With no discussion in the decision of Dr. Carlisle's opinion, the only appropriate remedy is remand.  Grogan, 399 F.3d at 1261-62; see also SEC v. Chenery Corp., 332 U.S. 194, 196 (1946).

The Court also notes that the references to Dr. Carlisle come in the initial step two part of the analysis, and then his opinion is wholly unreferenced in the step three or RFC formulation portions of the decision (other than in the rejection of the GAF scores of record).  (Tr. 863-871.)  Based on this, whether the opinion was considered in formulating the RFC remains unclear, and the limitations in the opinion are significant in this case.  For instance, there is certainly evidence in the record regarding Ms. M.'s depression becoming worse at some times or greater at other times, which could be significant in the consideration regarding whether it would cause her to be absent from work.  There is also testimony in the record regarding days where Ms. M. could not get out of bed because of her depression, which might obviously be significant in the same way.  These could impact the RFC if they are anticipated to have a significant impact on her ability to work, and depending on the proper classification of Ms. M.'s past job, these limitations may also have an impact.

The Court thus reverses the Agency's decision and remands based on these errors.  The Court declines to address the other issues raised by Ms. M. in this appeal,

as these two errors alone are plainly significant when considering the facts of this case. The Court notes, however, that all issues raised by the record should obviously be addressed by the ALJ on remand and findings made that are amenable to judicial review.

### IV. CONCLUSION

For the reasons stated above, the Court remands this case under sentence four of 42 U.S.C. § 405(g) for further proceedings.

DATED this 27th day of August, 2018.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge